UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **ROBERT TODD FREDERICKSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 3:23-cv-00373-MHH |
| ) | |
| **MEDRIO INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Mr. Frederickson has sued Medrio, his former employer, for breach of contract. Mr. Frederickson alleges that Medrio breached an anti-retaliation provision in its employee handbook because the company terminated his employment after he complained to his superiors about work assignments. (Doc. 1-1, p. 15). Medrio has asked the Court to dismiss Mr. Frederickson's claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Mr. Frederickson was an at-will employee who the company was free to terminate for any reason or no reason at all.

To evaluate Medrio's motion, the Court first states the procedural standards that govern Rule 12(b)(6) motions to dismiss. Then, applying those standards, the Court describes Mr. Fredrickson's factual allegations concerning Medrio's alleged breach of contract. Finally, the Court discusses the law that governs Mr.

1

Fredrickson's breach of contract claim and evaluates Mr. Frederickson's factual allegations to determine whether he has asserted a viable claim against Medrio.

I.

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A district court must consider Rule 12(b)(6) in conjunction with Rule 8. Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Generally, to meet the requirements of Rule 8(a)(2) and survive a Rule 12(b)(6) motion to dismiss, "a complaint does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). "Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012).

Typically, a district court must convert a motion to dismiss into a motion for summary judgment when the court "considers matters outside the pleadings," but a district court may consider documents to which a plaintiff refers in a complaint without converting the motion to dismiss into a motion for summary judgment if the documents "are (1) central to the complaint and (2) no party questions their authenticity." *Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 Fed. Appx. 770, 770-71 (citing FED. R. CIV. P. 12(d) and *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005)). When evaluating a Rule 12(b)(6) motion to dismiss, a district court must accept as true the factual allegations in the complaint and construe the factual allegations in the light most favorable to the plaintiff. *Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). Therefore, in evaluating Medrio's motion to dismiss, the Court considers Mr. Frederickson's letter agreement with Medrio, (Doc. 16-1, pp. 33-35), and the Medrio employee handbook to which Mr. Frederickson refers in his complaint, (Doc. 1-1, p. 15), and views the factual allegations in the complaint and the inferences from those allegations in the light most favorable to Mr. Frederickson.

## II.

Accepting Mr. Frederickson's allegations as true, on May 7, 2021, he signed an offer letter and accepted Medrio's offer to work with the company as a Senior Marketing Specialist. (Doc. 16-1, pp. 33-35; *see also* Doc. 1-1, p. 15, Facts ¶ 2).

3

The letter states that Mr. Frederickson was to report to Medrio's Senior International Marketing Manager. (Doc. 16-1, p. 33). The letter adds that Mr. Frederickson was an at-will employee of the company. (Doc. 16-1, pp. 33-34).

As a Medrio employee, Mr. Frederickson was subject to Medrio's employee handbook. (Doc. 1-1, p. 15, Facts ¶ 2; Doc. 1-1, p. 16, ¶ 2). The handbook contains company policies. The introduction to the handbook states:

> The Handbook is provided and intended only as a helpful guide. The Handbook is not, nor should it be considered to be, an agreement or contract of employment, express or implied, or a promise of treatment in any particular manner in any given situation. This Handbook states only general Company guidelines. … The policies and benefits of Medrio, whether contained here in the Handbook or elsewhere, may be modified from time to time or canceled by Medrio at its sole discretion… except for the rights of the parties to terminate employment at will, which may only be modified by an express written agreement signed by you and the management of the Company.

(Doc. 3-1, p. 8).

The "Whistleblower and Internal Complaint Policy and Procedure" in the handbook relates to known or suspected violations of: "(1) laws, governmental rules and regulations; (2) accounting, internal accounting controls and auditing matters; and (3) any company policies." (Doc. 3-1, p. 18). The whistleblower section contains a provision that states: "nothing in this grievance procedure is intended to create an express or implied agreement that alters the employment at-will relationship that exists between the Company and [the employee]." (Doc. 31, p. 18).

Medrio's whistleblower policy prohibits retaliation regarding whistleblower activity. The policy states that Medrio will not tolerate:

> [A]ny form of intimidation or retaliation against an employee because of the employee's good faith participation into an investigation of a reported concern. This protection against retaliation includes, but is not limited to, protection from an adverse employment action such as termination, compensation decreases, poor work assignments, and threats of physical or emotional harm. Any whistleblower who believes they are being retaliated against must contact Human Resources immediately.

(Doc. 3-1, p. 18; *see also* Doc. 1-1, p. 16, ¶ 3).

The handbook also contains a standalone retaliation provision. That provision states: "Medrio will not tolerate any retaliation against employees who have made complaints or raised concerns in a reasonable and business-like manner. If… someone has violated this no-retaliation policy, the employee [may report it to his] supervisor, Human Resources, or one of the Officers or members of the Board." (Doc. 3-1, p. 19).

New employees must review the employee handbook and sign an acknowledgement form that appears at the end of the handbook. That form provides that the employee acknowledges that he has reviewed the handbook and that he understands that the "Handbook is not a contract of employment nor is it contractually binding." (Doc. 3-1, p. 43).

In his first months with Medrio, Mr. Frederickson received a glowing performance review. (Doc. 1-1, p. 15, Facts ¶ 8). In early 2022, Mr. Frederickson's

5

work became strained because he was receiving instructions from two sources outside of his normal chain of command. (Doc. 1-1, p. 15, Facts ¶ 4). Mr. Frederickson reported the situation to his superiors in accordance with Medrio's employee handbook. (Doc. 1-1, p. 15, Facts ¶ 6). Afterwards, Medrio placed him on a performance improvement plan. (Doc. 1-1, p. 15, Facts ¶¶ 6, 7). Though Mr. Frederickson previously had been praised for his communication skills, the PIP indicated that Mr. Frederickson needed to improve his communication skills. (Doc. 1-1, p. 15, Facts ¶ 9).

Mr. Frederickson wrote a letter to his superiors stating that he was put on a PIP in bad faith in retaliation for complaining about his work assignments from outside his chain of command. (Doc. 1-1, p. 15, ¶ 11). After sending the letter, Medrio terminated Mr. Frederickson's employment. (Doc. 1-1, p. 16, ¶ 12).

## III.

Alabama law governs Mr. Medrio's breach of contract claim.[1] Medrio argues that for Mr. Frederickson to state a claim for breach of contract under Alabama law, he must adequately plead the existence of a valid contract, and he has not done so.

---

[1] Medrio removed this action from state court to federal court on the basis of diversity jurisdiction. (Doc. 1). "A federal court applies the substantive law of the forum state in a diversity case, unless federal constitutional or statutory law requires a contrary result." *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 774 (11th Cir. 2000). Mr. Frederickson's offer letter states that Alabama law applies to disputes concerning his employment with Medrio. (Doc. 16-1, p. 34). Under Alabama's choice-of-law rule for contract actions, the Court honors the parties' selection of Alabama law. *Blalock v. Sutphin*, 275 So. 3d 519, 523 (Ala. 2018).

(Docs. 3, 17). Under Alabama law, an employee handbook occasionally may create a contract between an employer and an employee. *Davis v. City of Montevallo*, 380 So. 3d 382, 384 (Ala. 2023); *see also Harper v. Winston Cnty.*, 892 So. 2d 346, 351 (Ala. 2004) ("This Court has recognized that an employee handbook can represent a binding contract obligating an employer to satisfy certain conditions precedent to dismissing an employee."). This is because "employee handbooks are not simply 'corporate illusion[s], 'full of sound ... signifying nothing.'" *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 729 (Ala. 1987) (quotation and citation omitted). Absent an enforceable contract, under Alabama law, either party to an employment relationship may terminate that relationship "for a good reason, a wrong reason, or for no reason at all." *Davis*, 380 So. 3d at 386.

For an employee handbook to create a contract, "the language in the handbook must be 'specific enough to constitute an offer.'" *Davis*, 380 So. 3d at 386 (quoting *Hoffman-La Roche,* 512 So. 2d at 735).[2] "That inquiry is objective: 'Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions.'" *Davis*, 380 So. 3d at 386 (quoting *Hoffman-La Roche*, 512 So. 2d at 731). To be binding, the provision

---

[2] For a handbook to create a contract, the employer must also communicate the offer "to the employee by issuance of the handbook, or otherwise," and "the employee must have accepted the offer by retaining employment after he has become generally aware of the offer." *Davis*, 380 So. 3d at 386 (internal quotation marks omitted) (quoting *Hoffman-La Roche*, 512 So. 2d at 735). The parties do not dispute that issuance and acceptance of the handbook occurred.

of a handbook that an employer allegedly violated must rise to the level of a rule; a "general statement of policy" will not suffice. *Hoffman-La Roche*, 512 So. 2d at 729, 734 (citation omitted). And "no contract exists when the employee handbook contains an unambiguous disclaimer of a contract." *Davis*, 380 So. 3d at 388-89; *see also McCluskey v. Unicare Health Facility, Inc.*, 484 So. 2d 398, 400 (Ala. 1986) (holding that provisions of employee handbook were not enforceable against employer where the handbook acknowledgment form stated "'[t]his Handbook and the policies contained herein do not in any way constitute, and should not be construed as a contract of employment between the employer and the employee, or a promise of employment'") (quoting employee handbook); *Abney v. Baptist Med. Ctrs.*, 597 So. 2d 682, 683 (Ala. 1992) (finding that handbook did not create an employment contract where the handbook "contained a statement disclaiming an employment contract and restating that employment was 'at will'" and contained an acknowledgment form with a disclaimer).

Here, the introduction to Medrio's employee handbook contains this disclaimer:

> The Handbook is provided and intended as a helpful guide. The Handbook is not, nor should it be considered to be, an agreement or contract of employment, express or implied, or a promise of treatment in any particular manner in any given situation.

8

(Doc. 3-1, p. 8).[3]  The section immediately following the introduction is titled "At-Will Employment."  That section provides:

> Medrio has an "at-will" employment policy, which means that the term of your employment is for no definite period and may be terminated by you or by Medrio at any time, with or without cause or advance notice. Although the Company may choose to end your employment for a cause, cause is not required. Further, the Company has the right to manage its work force and direct its employees. This includes the right to hire, transfer, promote, demote, reclassify, lay off, terminate, or change any term or condition of employment at any time, with or without a reason and with or without notice unless otherwise required by law.
>
> No one other than the CEO of the Company may enter into an agreement for employment for a specific period of time or make any agreement contrary to the policy of at-will employment.  Any such agreement must be in writing signed by the CEO of the Company and you.

(Doc. 3-1, p. 8).  The Employee Handbook Acknowledgment Form states that while some policies in the handbook are subject to change, "Medrio's employment at-will policy is not subject to change, except as expressly communicated in writing and signed by the Chief Executive Officer."  (Doc. 3-1, p. 43).  The acknowledgment form also provides:

> I acknowledge that my employment with Medrio is at-will and that I or Medrio can terminate my employment at any time, with or without cause, and with or without prior notice.

---

[3] Though Medrio's handbook states that each employee must sign the employee acknowledgment form at the end of the handbook, to date, neither party has presented a form that Mr. Frederickson signed.  (*See* Doc. 3-1, p. 8).  Nevertheless, it appears undisputed that Mr. Frederickson received the employee handbook and the acknowledgement form.  Mr. Frederickson alleges in his complaint that he was subject to the handbook, and he bases his breach of contract claim on the anti-retaliation provisions in the handbook. (Doc. 1-1, pp. 15-16).

> Lastly, I understand that this Handbook is not a contract of employment nor is it contractually binding.

(Doc. 3-1, p. 43).

As in *McCluskey*, the disclaimer in the Medrio acknowledgment form is unambiguous: "this Handbook is not a contract of employment nor is it contractually binding." (Doc. 3-1, p. 8). So too is the disclaimer in the introduction section of the Medrio handbook: "The Handbook is not, nor should it be considered to be, an agreement or contract of employment, express or implied, or a promise of treatment in any particular manner in any given situation." (Doc. 3-1, p. 43). As in *Abney*, between these bookended disclaimers are frequent reminders that the relationship between Medrio and its employees is at-will, absent a written statement of employment for a specific period of time signed by Medrio's CEO. (Doc. 3-1, pp. 8-9, 13 (standards of conduct section)).

Even the whistleblower provision on which Mr. Frederickson relies for its non-retaliation language reiterates the at-will nature of employment relationships with Medrio:

> It is important for you to understand that nothing in this grievance procedure is intended to create an express or implied agreement that alters the employment at-will relationship that exists between the Company and you, as set forth in the section of this Handbook entitled "At-Will Employment."

10

(Doc. 3-1, p. 18).  Per *Abney*, this language diminishes Mr. Frederickson's ability to treat the anti-retaliation paragraph of the whistleblower section as binding upon Medrio.

The language of the whistleblower section, read as a whole and in the context of the entire handbook, also undermines Mr. Frederickson's effort to assert a claim against Medrio for breach of the whistleblower anti-retaliation provision.  The whistleblower provision indicates that it applies only to whistleblower conduct and not to conduct relating to other types of employment issues.  (Doc. 3-1, p. 19) ("This policy does not apply to claims involving perceived violations of the Company's equal employment opportunity policies. Such claims should be reported immediately and in the manner set forth in the Company's 'Equal Employment Opportunity' and/or 'No Harassment' policies . . .").  The Equal Employment Opportunity section of the handbook has its own non-retaliation provision:  "No employee will be subject to, and the Company prohibits, any form of discipline or retaliation for reporting perceived violations of this [EEO] policy, pursuing any such claim, or cooperating in any way in the investigation of such claims." (Doc. 3-1, p. 9).[4]  The dedicated anti-retaliation provisions in the whistleblower and EEO sections

---

[4] Notably, federal law prohibits retaliation against employees who assert certain federal employment and whistleblower claims.  *See*, *e.g.*, 42 U.S.C. § 12203 (Americans with Disabilities Act's anti-retaliation provision).  Employees asserting retaliation claims against employers typically pursue their claims under these federal statutes, not under state law for breach of anti-retaliation provisions in employee handbooks.  Federal law does not prohibit retaliation outside of

of the handbook suggest that the general, standalone retaliation provision applies to all other instances of alleged retaliation. The general retaliation provision does not prohibit discipline related to complaints or concerns. The general retaliation provision states: "Medrio will not tolerate any retaliation against employees who have made complaints or raised concerns in a reasonable and business-like manner. If… someone has violated this no-retaliation policy, the employee [may report it to his] supervisor, Human Resources, or one of the Officers or members of the Board." (Doc. 3-1, p. 19). Of the retaliation provisions in the handbook, the general retaliation provision seems most relevant to Mr. Frederickson's complaint to his superiors about assignments from individuals outside of his chain of command.

In any event, under Alabama law, the unambiguous disclaimers in Medrio's employee handbook clearly communicate that the handbook does not create a contract for a period of employment, and nothing in the handbook alters the at-will nature of employment with Medrio. Only a written agreement signed by the CEO secures contractual rights that may support a claim for breach of contract. Mr. Frederickson does not allege that he had such an agreement with Medrio.[5]

---

the context of rights afforded employees under federal law. State law at-will principles ordinarily apply when employment decisions are not impacted by federal statutes.

[5] Medrio's Director of Human Resources signed Mr. Frederickson's offer letter from Medrio. (Doc. 16-1, p. 35).

## IV.

For the reasons discussed above, the Court grants Medrio's motion to dismiss. By separate order, the Court will dismiss this action. The Clerk shall please TERM Doc. 3.

**DONE** and **ORDERED** this September 9, 2024.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE